[Civ. No. 23117.  Second Dist., Div. Two.  Oct. 17, 1958.]

ROBERT N. HOUGHTON, Appellant, v. CITY OF LONG BEACH et al., Respondents.

Albert D. White and Kenneth Sperry for Appellant.

Walhfred Jacobson, City Attorney, and Clifford E. Hayes, Deputy City Attorney, for Respondents.

ASHBURN, J.—Here presented is another problem growing out of the pension provisions of the City Charter of Long Beach. Plaintiff, a police sergeant, joined the department in 1921 and at the time of trial had served continuously for more than 30 years. On the effective date of an attempted repeal of pension provisions (by adoption of § 187.1, effective on March 29, 1945) he had served some 24 years. Plaintiff claims to be entitled when he retires to a pension of two-thirds of his pay based on the highest rank or position held by him one year prior to the date of his retirement, this under section 187, subdivision 2, of the charter as enacted in 1925. He has now served some 37 or 38 years in the department. Defendant asserts that plaintiff is entitled to a pension of 56⅔ per cent of said annual salary by virtue of the said amendment adopting section 187.1 in 1945. The action is one for declaratory relief. The trial judge having ruled with defendant, plaintiff appeals.

The pattern for pensions for members of the police and fire departments starts with section 187 of the Charter which was enacted in 1925 (Stats. 1925, p. 1333). Subdivision 2 then provided that any member of either department, after serving for 30 years in the aggregate in any capacity or rank whatever, should upon his own application or order of the board of police and fire commissioners, be retired and should thereafter be paid a lifetime yearly pension ''equal to two-thirds of the annual salary attached to the rank or position held by him in such department one year prior to the date of his retirement.'' The said subdivision also provided that after 20 years of aggregate service such member should be retired upon his own application or upon order of the commission, and thereupon should be paid a ''limited pension'' for 20 years service of 50 per cent of the annual salary of the rank or position held by him one year prior to date of retirement, plus an additional 1⅔ per cent of such salary for each year over 20 years and less than 30 years in the aggregate served by the member before retirement.

Subdivision 6 of the same section 187 provided for a relief and pension fund. The commission was directed thereby to employ an actuary to report "the cost of maintaining, on a reservation basis, the pension system as hereinabove provided." The same subdivision further said: "[T]he City Manager is hereby authorized to include in his annual budget an amount not exceeding two per cent (2%) of the general tax levy to be paid into said fund, based upon the estimate of cost as established by the actuary's survey, and the City Council shall annually appropriate the amount of such estimate to the 'Relief and Pension Fund,' and also the amount of any deficit which may remain therein in the event the appropriation of any previous year prove insufficient to pay all demands drawn against such fund, which amount, however, in any one year, shall not exceed two per cent (2%) of the general tax levy." This required no contribution from the employee. It seems clear that it provided a limited fund consisting of not more than 2 per cent of the general tax levy for the year, and, in case of a deficit in any one year, same was required to be made good in the following year, but the appropriation for any one year was specifically limited to 2 per cent of the general tax levy for that year. Conceivably a deficit in any one year would never be made up; this would be true if the annual cost were to amount to more than two per cent of the general levy in each successive year. We are told in *England* v. *City of Long Beach*, 27 Cal.2d 343 [163 P.2d 865] : "The accruing payments, however, have not been made to petitioner because, according to respondents, payments due to pensioners have greatly exceeded the sums paid into the pension fund." (P. 344.) Also: "The report of the actuary, appointed as directed by this subdivision, stated that the payment of two per cent of the general tax levy would be wholly inadequate and that an amount equal to at least five and one-half per cent would be required each year to place the pension system on a reservation basis. Thereafter, until 1931, the full two per cent authorized was not paid into the fund, but the city manager and the city council paid into the fund only a sufficient amount to pay such pensions as then became due." (P. 345.) Respondents' brief herein says: "It is true that a fund was to be established on an actuarially sound basis, but the total contribution of the City was not to exceed two per cent (2%) of the general tax levy in any one year. It was subsequently ascertained that insufficient funds were provided to establish a fund on an actuarially

sound basis. The result was that pension demands soon exceeded the funds provided.'' Appellant has not denied the last two sentences of this statement and the fact therefore is established sufficiently for present purposes. (See *Royko* v. *Griffith Co.*, 147 Cal.App.2d 770, 774 [306 P.2d 36].)

Section 187 was amended in 1931 (Stats. 1931, p. 2785). The provisions of subdivision 2 above mentioned were not materially altered and hence no change was made in the amount of pension to which plaintiff would become entitled. But subdivision 6 was amended to provide: ''The City Manager shall include in his anual budget an amount equal to two per cent of the estimated pay of the members of the police and fire departments, as hereinafter provided, and the City Council shall appropriate such amount to the 'Relief and Pension Fund.'

''There shall be paid into the said fund, the following monies, to-wit: (a) The City Auditor is hereby authorized, and shall deduct and pay into said fund semi-monthly two per cent of the salary of each member of the police and fire departments; (b) The amount appropriated by the City Council, as hereinbefore provided, to-wit: a sum equal to the amount paid into said fund from the salaries of the members of the police and fire departments; . . .''

The England case, *supra*, says at page 347: ''The only portion of subdivision 6 which might have been held to constitute an express limitation—the reference in the 1925 amendment to an amount not exceeding two per cent of the general tax levy—was eliminated by the 1931 amendment.'' The court specifically held, following the 1931 amendment, ''the pension payments directed to be made by the charter constitute general obligations of the city and are not limited in amount to the sums assigned to the pension fund by subdivision 6.'' (P. 347.) It was stipulated at the trial of the instant case that ''pursuant to the said 1931 Amendment deductions of two per cent of plaintiff's monthly salary were thereafter deducted for payment into a pension fund by said City and continued up to March 29, 1945, when the deductions terminated pursuant to the effective date of Section 187.1 of said Charter.''

We are unable to accept the view expressed in appellant's reply brief that the England case and *City of Long Beach* v. *Lentz*, 27 Cal.2d 890 [165 P.2d 677], hold that the pensions prescribed by section 187 of the charter always had been general obligations of the city. While there is language

in the England opinion which is consistent with that view, the actual ruling was not so broad. It dealt with a pension which had been granted in 1944, upon which none of the accruing payments had been made because of insolvency of the pension fund. This was long after the amendment of 1931 which eliminated the 2 per cent limitation upon the city's provision for the fund. The question was whether the instalments of this 1944 pension were general obligations of the city. This was answered in the affirmative, but it was not necessary for the court to decide, nor did it hold, that prior to the 1931 amendment pensions had been general obligations of the city. The reply brief insists that the contrary is true and invokes the supposed authority of *City of Long Beach* v. *Lentz, supra,* 27 Cal.2d 890, which was decided upon the authority of England, *supra.* Resort to the record is had in an effort to establish appellant's contention. It there appears that the case involved pension instalments which had accrued subsequent to January 1, 1944; some of the pensions in question had been granted prior to the effective date of the 1931 amendment, but the instalments remaining unpaid were those accruing after January 1, 1944,—an aggregate of $149,321.62 according to the amended complaint. The limitation of the fund to a 2 per cent tax levy having been eliminated in 1931, the question before the court in the Lentz case was only that of a general obligation as to the payments becoming due after January 1, 1944. The judgment did not enter into the refinements suggested by appellant herein, but said: ''[I]t is the duty of the plaintiff to appropriate and make available sufficient funds to pay all pensions which are now due, or which may become payable in the future, under the provisions of Section 187 or 187.1 of said Charter.'' And the Supreme Court said: ''The problem thus presented has been fully determined by our decision in the England case, where it was held that the pension payments directed to be made by subdivision 2 of section 187 of the charter, as amended in 1925 and 1931, constitute general obligations of the city and are not limited in the manner urged by the city. The declaratory relief granted in the present case is entirely in accord with that decision.'' (*City of Long Beach* v. *Lentz, supra,* 27 Cal. 2d 890.) It is our conclusion that neither *Allen* nor *Lentz* holds that the pension fund or obligation was not a limited one prior to the 1931 amendment; we further hold that it was in fact limited to 2 per cent of the general tax levy.

The solution of the ultimate question at bar requires a

determination at this point of the validity of this 1931 amendment, which operated to convert the pension into a general obligation (not limited to any prescribed percentage of the general levy) and to impose upon the employee contributions to the fund equal to two per cent of his salary.

■ It had been established previous to *Allen* v. *City of Long Beach*, 45 Cal.2d 128 [287 P.2d 765] (Sept. 23, 1955)[1] that the employee's right to a future pension vests upon his entering the employment and rendering substantial services therein, vests in such a sense that it cannot be destroyed by charter amendment even before the time for retirement has arrived (*Kern* v. *City of Long Beach*, 29 Cal.2d 848, 853, 855 [179 P.2d 799], Apr. 1, 1947) ; but the vesting is subject to the qualification that the potential pension may be modified in reasonable manner and to a reasonable extent. ■ The Kern case says: ''Thus it appears, when the cases are considered together, that an employee may acquire a vested contractual right to a pension but that this right is not rigidly fixed by the specific terms of the legislation in effect during any particular period in which he serves. The statutory language is subject to the implied qualification that the governing body may make modifications and changes in the system. The employee does not have a right to any fixed or definite benefits, but only to a substantial or reasonable pension. There is no inconsistency therefore in holding that he has a vested right to a pension but that the amount, terms and conditions of the benefits may be altered'' (p. 855) ; and, ''[t]he rule permitting modification of pensions is a necessary one since pension systems must be kept flexible to permit adjustments in accord with changing conditions and at the same time maintain the integrity of the system and carry out its beneficent policy.'' (P. 854.) In the later case of Manning Allen, *supra*, the court became more specific as to the extent of permissible modifications in advance of retirement. Certain 1951 amendments to the Long Beach Charter were there under consideration, especially one attempting to substitute a fixed pension for a fluctuating one. ■ At page 131 it is said: ''An employee's vested contractual pension rights may be modified prior to retirement for the purpose of keeping a pension system flexible to permit adjustments in accord with changing conditions

---

[1]This is the case of Manning T. Allen; the one reported in 101 Cal. App.2d 15 *infra*, is that of Albion R. Allen. For convenience we shall refer to them as the Manning Allen and the Albion Allen case, respectively.

and at the same time maintain the integrity of the system. . . . ██ Such modifications must be reasonable, and it is for the courts to determine upon the facts of each case what constitutes a permissible change. ██ To be sustained as reasonable, alterations of employees' pension rights must bear some material relation to the theory of a pension system and its successful operation, and changes in a pension plan which result in disadvantage to employees should be accompanied by comparable new advantages.'' These criteria were reiterated in *Abbott* v. *City of Los Angeles,* 50 Cal.2d 438 [326 P.2d 484] (June 6, 1958). The court says in each of these opinions that each case must turn upon its own facts. ██ It seems quite apparent that a revamping of an existing system so as to eliminate shortages in the available fund, by substituting a general obligation of the city for a mere two per cent of the general levy, has direct relation to the integrity of the system and keeping it flexible ''to permit adjustments in accord with changing conditions.'' The imposition of a member's contribution of two per cent of his salary toward a solvent fund, in substitution for an insolvent one, is ''a disadvantage'' which is ''manifestly accompanied by comparable new advantages.'' We therefore hold that the 1931 amendment to section 187 was valid as applied to plaintiff. The city was therefore entitled to collect from him the 2 per cent contributions which it did receive until March 29, 1945, the effective date of adoption of section 187.1 which attempted ''to withdraw substantially all pension rights granted by section 187 of its charter to employees of the police and fire departments.'' (*Allen* v. *City of Long Beach, supra,* 45 Cal.2d 128, 130.) But we are told by respondents' brief, with no denial from appellant, that ''[b]y 1945, the 'Relief and Pension Fund' was exhausted.''

██ The text of that 1945 amendment is as follows: ''Sections 187 and 188 of this Charter are hereby repealed; provided, however, that any member of the Fire or Police Department who shall have served in such department for twenty (20) years or more on the effective date of this amendment shall be entitled to retire at any time within five (5) years from said effective date as provided by subdivision (2) of said Section 187, and, beginning with the date of his retirement, shall be paid a pension of such percentage of his salary as he would have been entitled to receive had he been retired on the effective date of this amendment. . . .'' This language preserves to members who had served 20 years or more the

same pension which was provided for 20-year employees in subdivision 2 of the repealed section 187, a fluctuating one equal to 50 per cent of the salary plus 1⅔ per cent thereof for each year of service over 20 and less than 30; but its application is confined to those who had attained the 20-year status upon the effective date of the amendment and who should elect to retire within five years from said date, the amount to be fixed at the same percentage as if the employee had retired on the effective date of the amendment.

This section 187.1 was specifically held valid as to the complaining party in each of three decisions of the district court of appeal, namely, *Palaske* v. *City of Long Beach,* 93 Cal.App. 2d 120 [208 P.2d 764], July, 1949; *Albion Allen* v. *City of Long Beach,* 101 Cal.App.2d 15 [224 P.2d 792], Dec., 1950; and *Allstot* v. *City of Long Beach,* 104 Cal.App.2d 441 [231 P.2d 498], May, 1951. The Supreme Court denied a hearing in each instance.

These decisions are not concerned with statutory changes substituting a pension of fixed amount in place of a fluctuating one, as was the case in *Allen* v. *City of Long Beach, supra,* 45 Cal.2d 128; *Abbott* v. *City of Los Angeles, supra,* 50 Cal. 2d 438 [326 P.2d 484]; *Cochran* v. *City of Long Beach,* 139 Cal.App.2d 282 [293 P.2d 839]; *Chapin* v. *City Commission,* 149 Cal.App.2d 40 [307 P.2d 657]; *Glaeser* v. *City of Berkeley,* 148 Cal.App.2d 614 [307 P.2d 61]; they pass upon the power to withdraw, before right to retirement has accrued, the privilege of working beyond the permissible retirement age and thereby acquiring a larger pension than would be received as the result of retiring immediately upon reaching the specified permissible age. Relying primarily upon the unanimous Kern decision, *supra,* the court in each of those cases held that such a change is a lawful one relating to "the amount, terms and conditions of the benefits" to accrue in the future.

In *Palaske, supra,* petitioner, after being credited with time spent in the armed services, had 22 years of service when section 187.1 became effective. The court held that the limitation upon the amount of pension which he could obtain was valid, saying in part: "Applying the principles set forth in *Kern* v. *City of Long Beach, supra,* it appears that it was within the power of the city to modify its pension plan to provide that on and after the effective date of the amendment an employee who was entitled to retire might do so or not, as he saw fit, but that if he chose to continue as an employee he

could not thereby earn any additional pension above that to which he was entitled on the effective date of the amendment. As stated by the Supreme Court, the employee has a vested right only to a substantial or reasonable pension. His contractual right to such a pension has not been impaired by legislation which, operating prospectively, merely withdraws any right or option to earn a bonus by continuing in employment after he has become eligible for retirement.'' (P. 132.) Also: ''We are in accord with appellants' contention that since the city had the power to modify the pension plan although it could not repeal it altogether, that section 187.1 should be construed as effective to limit respondent's pension right to 50 per cent of his salary. While the attempted repeal of all rights was void, the provision limiting pension rights is separable therefrom. It appears from the amendment that the electors of the city intended to reduce the liability for pensions created under section 187 to the extent of their power constitutionally to do so, and intended to preserve pension rights only to those who were eligible for retirement on the effective date. Although they could not deprive respondent and others similarly situated of all pension rights, they had the power to modify such rights, and it would seem to follow, therefore, that respondent is entitled only to those rights accorded by the amendment—that is, a limited pension. Those who were eligible for retirement on the effective date were entitled to the pension they had earned on the effective date and no more, while those who reached the 20-year mark subsequent to the effective date became eligible for retirement on a 50 per cent pension and no more.'' (P. 133.)

*Albion Allen* v. *City of Long Beach, supra,* 101 Cal.App.2d 15, 20: ''After due consideration of the arguments advanced by respondents, we adhere to the conclusion reached in the Palaske case, wherein this court held that the proviso in the repealing amendment saving pension rights to those who had completed the minimum term of service was separable from the invalid portion of the amendment which attempted to repeal all pension rights as to others; that such proviso constituted a reasonable modification under the rule laid down in the Kern case, and operated to limit the pension rights of those who had not served the minimum term to a pension of 50 per cent.''

*Allstot* v. *City of Long Beach, supra,* 104 Cal.App.2d 441, 443: ''In the Allen case the District Court of Appeal was asked to reverse its holding in the Palaske case and declined

to do so, adopting as a part of its opinion the following from the former decision (p. 28): 'Those who were eligible for retirement on the effective date were entitled to the pension they had earned on the effective date and no more, while those who reached the 20-year mark subsequent to the effective date became eligible for retirement on a 50 per cent pension and no more.' Plaintiffs now ask us to disregard the quoted holding in the Kern case and also to disapprove of the holdings in the Palaske and Allen cases to the same effect. It is said that the point did not require decision in the Kern case and received practically no consideration by the court in the Allen case. We are not sympathetic to the criticism of either decision." At page 444: "Not only are we well satisfied that the former decisions reflect the mature judgment of the court on the points decided, but after giving the problems independent consideration we are fully in accord with the reasoning and the conclusions of the District Court of Appeal in both the Palaske and Allen cases."

In the Allstot case, *supra*, Mr. Presiding Justice Shinn also said, at page 445, referring to the Albion Allen case, *supra*: "Moreover, we may not overlook the fact that the same argument was advanced in the petition for hearing in the Allen case and that a hearing was denied. So far as we are concerned, the denial of a hearing in a case which decides questions of such widespread interest and importance means that they were fully considered by the Supreme Court and were not deemed to have been decided incorrectly." Again the Supreme Court unanimously denied a hearing. This is "most persuasive" (*People* v. *Rowland,* 19 Cal.App.2d 540, 542 [65 P.2d 1333]).

In *Housing Authority* v. *Peters,* 120 Cal.App.2d 615, 616 [261 P.2d 561], it is said: "Therefore we are bound by the foregoing decisions, the correct rule being that when the precise question of law has been decided by a District Court of Appeal and the Supreme Court has denied a hearing, such decision will be followed as settling the law in the absence of a later decision of the Supreme Court overruling or modifying the prior case. [Citations.]"

With respect to the Manning Allen case, *supra*, the trial judge at bar found: "[T]hat it is true that the Supreme Court established a new criterion for determining the reasonableness of permissive changes in pension systems where the changes occur prior to the time the employee becomes eligible for

retirement, but did not alter the law with respect to a change in pension systems if the change altered the benefit to be earned subsequent to the employee being eligible for a retirement pension." Also: "The court further finds that the Supreme Court in said case held that the decisions culminating in *Allstot* v. *City of Long Beach,* 104 Cal.App.2d 441 [231 P.2d 498], which upheld a charter amendment depriving employees of the opportunity to earn an increase in their pensions by remaining in service after reaching retirement age, were distinguishable from the *Allen* case." This is a reference to the following passage of the Manning Allen case, *supra*: "Cases relied on by the city which were decided prior to *Kern* v. *City of Long Beach,* 29 Cal.2d 848 [179 P.2d 799], are not controlling here, and the series of decisions culminating in *Allstot* v. *City of Long Beach,* 104 Cal.App.2d 441 [231 P.2d 498], which upheld a charter amendment depriving employees of the opportunity to earn an increase in their pensions by remaining in service after reaching retirement age, are distinguishable from the present case." (*Allen* v. *City of Long Beach, supra,* 45 Cal.2d 128, 133.) Certainly the Palaske, Albion Allen and Allstot cases, *supra,* were not overruled by the Manning Allen decision. Nor did the later Abbott case, *supra,* 50 Cal.2d 438, do so. The claim that the court in the Abbott case "expressly disapproved 'any implications in the former' decisions of the District Courts of Appeal which were inconsistent with the 'commensurate advantage' criteria . . ." is misplaced. The quoted phrase "any implications in the former" is found in this context in Abbott, at page 453: "*Carey* v. *Retirement Board* (1955), 131 Cal.App.2d 739 [281 P.2d 25], is relied upon by defendants. . . . That case was decided before the Allen case and any implications in the former which are inconsistent with our decision in the latter must be deemed disapproved."

The Palaske, Albion Allen and Allstot rulings stand as persuasive if not controlling authority.

There is no merit in the contention that the city is estopped to make any changes in the pension system after one has entered its service in reliance thereon. It is thus expressed in appellant's brief: "Since the obvious purpose of the offer contained in the first sentence of Section 187, subdivision 2, was to induce the employee to render an aggregate period of service of at least 30 years, the City would be estopped from withdrawing or substantially altering its offer after the acceptance thereof by partial performance on the

part of the employee, under well-settled principles of contract law.'' The fact is that plaintiff entered the police department in 1921 and the city's pension plan was first put into effect in 1925 (see *England, supra,* at pp. 344-345). So far as plaintiff is individually concerned it was merely a method of increase in salary through adding deferred payments. There is no basis for estoppel so far as he is concerned. (*Kern* v. *City of Long Beach, supra,* 29 Cal.2d 848, 851-853.) ▮ It is the effect upon the individual employee that controls in this field of amendments to a pension system. (*Abbott* v. *City of Los Angeles, supra,* 50 Cal.2d 438, 449.)

▮ It seems to us that the ''rule of property theory'' discussed in *Abbott, supra,* at page 455 et seq. (but there held inapplicable) is pertinent here. If section 187.1 was not valid with respect to plaintiff the city had a lawful right to continue to deduct 2 per cent of his salary from March 29, 1945, to the present date. (See quotation from *Palaske, supra,* as to severability.) ·The same is true of others standing in the same position as plaintiff. After the city's reliance upon the Palaske line of cases, beginning in July, 1949, it would seem not sound to now reverse those decisions with a retroactive effect, for rights and duties have accrued upon the basis of decisions which have represented the law since 1949; if they are to be reversed the effect of that action doubtless will be limited to future events. That is what was done with reference to the Cahan rule (*People* v. *Kitchens,* 46 Cal. 2d 260, 262 [294 P.2d 17]). ▮ *County of Los Angeles* v. *Faus,* 48 Cal.2d 672, 680 [312 P.2d 680], discusses the matter thus: ''It is the general rule that a decision of a court of supreme jurisdiction overruling a former decision is retrospective in its operation and that the effect is not that the former decision was bad law but that it never was the law.

''A well-recognized exception to this general rule is that, where a constitutional provision or statute has received a given construction by a court of last resort and contracts have been made or property rights acquired under and in accordance with its decision, such contracts will not be invalidated nor will vested rights acquired under the decision be impaired by a change of construction adopted in a subsequent decision. Under those circumstances it has been the rule to give prospective, and not retrospective, effect to the later decision. (7 R.C.L. (1915), Courts, § 36, p. 1010.)''

We consider the Palaske, Albion Allen and Allstot cases

not to be in conflict with Manning Allen or Abbott, and we accept them as good law.

The judgment is affirmed.

Fox, P. J., and Herndon, J., concurred.

A petition for a rehearing was denied November 14, 1958, and appellant's petition for a hearing by the Supreme Court was denied December 10, 1958.