728 P.2d 1237

**FUND MANAGER, PUBLIC SAFETY PERSONNEL RETIREMENT SYSTEM, Plaintiff-Appellant,**

v.

**CITY OF PHOENIX POLICE DEPARTMENT PUBLIC SAFETY PERSONNEL RETIREMENT SYSTEM BOARD; and Joseph R. Coplan, Defendants-Appellees.**

**No. 1 CA–CIV 8314.**

Court of Appeals of Arizona, Division 1, Department A.

July 1, 1986.

Review Denied Dec. 2, 1986.

Eaton, Lazarus, Dodge & Lowry, Ltd. by Marc R. Lieberman, Phoenix, for plaintiff-appellant.

Napier & Jones, P.C. by Robert E. Jones, Jr., Phoenix, for defendant-appellee City of Phoenix Police Dept. Public Safety Personnel Retirement System Bd.

Davis & Layton, P.C. by Norman J. Davis, Goodyear, for defendant-appellee Joseph R. Coplan.

OPINION

MEYERSON, Judge.

When City of Phoenix policeman Joseph R. Coplan was hired in 1971, state law provided that he would receive an accidental disability pension if an injury incurred in the performance of his job prevented him from performing his regularly assigned duties. Nine years later, the law was amended to provide for a disability pension only if an employee was unable to perform a reasonable range of duties within his department. Several months later, Coplan was injured while on duty as a motorcycle patrolman. Coplan discontinued his work as a motorcycle officer in 1983 and applied for accidental disability benefits.

Under the definition of accidental disability in effect when Coplan was hired, he

would be entitled to a disability pension. Under the definition in effect when he was injured, he would not be entitled to a benefit because he was able to perform other duties within his department. In this appeal, we must decide the important question of whether the terms of a public employee's contract of employment may be modified by subsequent legislative action.

## I. FACTS

James Coplan started work with the City of Phoenix Police Department on May 10, 1971. He became a motorcycle patrolman in November, 1975. On November 18, 1980, Coplan injured his left shoulder, arm and wrist as the result of a motorcycle accident. After several surgeries, Coplan discontinued his duties as a motorcycle patrolman in February, 1983. He remained employed by the Phoenix Police Department and ultimately began work as a "callback" operator, returning complainant calls.

As a City of Phoenix police officer, Coplan is a member of the Public Safety Personnel Retirement System, a statewide retirement and disability program for public safety personnel who are regularly assigned hazardous duty. A.R.S. §§ 38–841 to –855. In May, 1983, Coplan filed an application with the City of Phoenix Police Department Public Safety Personnel Retirement System Board (local board) for accidental disability benefits. The local board awarded him an accidental disability pension based on the injuries he received in the accident. In awarding the accidental disability benefits, the local board applied the definition of accidental disability in effect when Coplan was hired.

The Fund Manager of the Public Safety Personnel Retirement System (Fund Manager) became involved in this matter in

carrying out its statutory duty to protect the fund from unauthorized disbursements. *See* A.R.S. § 38–848(G). It petitioned the local board for a rehearing, asserting that Coplan's eligibility should have been determined pursuant to the 1980 amendment to A.R.S. § 38–842(1). The local board upheld its decision. The Fund Manager appealed this decision to the Maricopa County Superior Court. The court granted summary judgment in favor of Coplan and the Fund Manager filed an appeal in this court.

The statutory definition applied by the local board in awarding Coplan disability benefits was former A.R.S. § 38–842(1), which stated:

'Accidental disability' means a physical or mental condition which, in the judgment of the board, totally and presumably permanently prevents an employee from performing his *regularly assigned duties* and was incurred in the performance of his duty. A determination of disability shall be based on medical evidence satisfactory to the board.

(Emphasis added.) The Fund Manager argues that A.R.S. § 38–842(1), as amended, effective July 31, 1980, should have been used to determine Coplan's entitlement to disability benefits.* It provides:

'Accidental disability' means a physical or mental condition which, in the judgment of the local board, totally and permanently prevents an employee from performing a *reasonable range of duties within the employee's department* and was incurred in the performance of his duty. A determination of disability shall be based on medical evidence satisfactory to the board.

(Emphasis added.)

## II. *Yeazell v. Copins*

The starting point in resolving the contentions of the parties is the decision of the

---

* The Fund Manager also refers to A.R.S. § 38–844.01, effective July 27, 1983, which provides:
A member of the system does not have vested rights to benefits under the system, except as provided in § 38–854, until he files an application for benefits and is found eligible for those benefits as provided in this article. *An eligible claimant's rights to benefits*

*vest on the date of his application for those benefits or his last day of employment under the system, whichever occurs first.*
(Emphasis added.) This statute was not in effect at the time of Coplan's hiring, his injury or his application for benefits. Accordingly, we do not consider it in this appeal.

Arizona Supreme Court in *Yeazell v. Copins,* 98 Ariz. 109, 402 P.2d 541 (1965). Coplan and the local board argue that the trial court correctly found that this case is controlled by *Yeazell.* In *Yeazell,* a Tucson police officer appealed a decision of a local board setting his pension benefit at the statutory amount in effect at the time of the officer's retirement. The police officer contended that the statute in effect at the time he had been hired was the applicable law from which to determine benefits. The retirement benefit in effect at that time would have allowed him an additional $7.21 per month.

The Arizona Supreme Court concluded that public employees' pension rights should be determined pursuant to basic contract principles. The court held that pensions are not gratuities but rather they are rights which derive from mutual promises arising out of the employment contract. The court treated retirement benefits as deferred compensation. Applying contract law, the court found that neither Yeazell's employer, Yeazell, nor the legislature could unilaterally change the terms of the contract. It further found that the contract incorporated the statutes in effect when Yeazell was hired, including the formula for establishing retirement benefits.

Central to the court's holding that the legislature could not modify Yeazell's pension without his consent was the conclusion that the right to receive the retirement pension on the terms in existence at the inception of employment vested at that time. *See Norton v. Arizona Dept. of Public Safety Local Retirement Bd.,* 150 Ariz. 303, 306, 723 P.2d 652, 655 (1986). Therefore, in order to determine whether *Yeazell* controls the present appeal, we must decide if the accidental disability pension likewise vested at the time of Coplan's employment.

### III. VESTING

■ We should first explain how the term "vest" is used in this opinion. Ordinarily, vesting "refers to a provision in a retirement plan whereby the member's right to a benefit becomes effective upon fulfillment of specified qualifying conditions, such as service for a certain period of time, which right is not forfeited by separation from service prior to the prescribed age for retirement." *Kraus v. Board of Trustees,* 72 Ill.App.3d 833, 836, 28 Ill.Dec. 691, 694, 390 N.E.2d 1281, 1284 (1979). "Vesting in a legal sense, on the other hand, refers to a contractual right to and interest in a pension that may be upheld at law." *Id.* at 836, 28 Ill.Dec. at 694, 390 N.E.2d at 1284. The word "vest" is used herein in its legal sense.

"The rule that legislation may not retroactively disturb vested rights is simple enough; the difficulty arises in defining a vested right, and determining when a right actually vests." *Hall v. A.N.R. Freight System, Inc.,* 149 Ariz. 130, 140, 717 P.2d 434, 444 (1986). In an early decision, our supreme court declared that rights are vested "when the right to enjoyment, present or prospective, has become the property of some particular person ... as a present interest." *Steinfeld v. Nielsen,* 15 Ariz. 424, 465, 139 P. 879, 896 (1913). The holding in *Yeazell* reflects the court's view that a public employee's interest in a retirement benefit or pension is so significant that it should become a right or entitlement at the outset of employment.

A right is contingent, on the other hand, if it only comes into existence upon an event or condition which may not happen. *Steinfeld v. Nielsen,* 15 Ariz. at 465, 139 P. at 896. Viewed in this light, we hold that a public employee's right to or interest in a disability pension vests upon the occurrence of the event or condition which would qualify him for such pension—the injury.

> When one's contract of employment includes service connected disability rights, those rights become vested at the instant the employee is injured in the course of his employment.

*State ex rel. Johnson v. Funkhouser,* 52 Wash.2d 370, 373, 325 P.2d 297, 299 (1958).

Our holding is reflected in Arizona public employment decisions subsequent to *Yeazell.* In *Krucker v. Goddard,* 99 Ariz. 227, 408 P.2d 20 (1965), the court held that the legislature could not retroactively deprive a

judge of a vested right to withdraw contributions from the judge's retirement fund. The court concluded that the right to withdraw the contributions was vested because the judge "had fulfilled every condition precedent to having his contributions returned." *Id.* at 230, 408 P.2d at 22. In *Bennett ex rel. Arizona St. Personnel Comm'n v. Beard*, 27 Ariz.App. 534, 556 P.2d 1137 (1976), this court considered the application of *Yeazell* to annual leave. When Beard was hired, the highway department allowed its employees to earn annual leave at the rate of twelve hours for each month worked. Four years later, after Beard had come under the jurisdiction of the personnel commission, a rule provided that annual leave would accrue at the rate of ten hours per month. Beard argued that under *Yeazell,* the twelve hours per month provision in the employment "contract" could not be unilaterally changed by the state. This court concluded that *Yeazell* did prohibit the state from reducing the employee's accumulated annual leave which had been earned—which had vested—but that *Yeazell* did not prohibit the state from prospectively changing "future benefits as yet unvested." *Id.* at 537, 556 P.2d at 1140.

We reached a similar conclusion in *Abbott v. City of Tempe*, 129 Ariz. 273, 630 P.2d 569 (App.1981). In *Abbott,* a class of firemen contended that Tempe could not decrease the rate of holiday pay and the accrual of vacation credits below the level which was in existence at the time of employment. No contention was made that the city was attempting to deprive the plaintiffs of pay or credits which had already accrued. Rather, the plaintiffs argued that the city could not unilaterally alter provisions which became part of their contract of employment. The court concluded that the right to future benefits had not vested because the employees had "yet to perform services entitling [them] to the benefits." *Id.* at 279, 630 P.2d at 575. *See Godbey v. Roosevelt Sch. Dist. No. 66*, 131 Ariz. 13, 638 P.2d 235 (App.1981) (accumulated sick leave gave teachers a vested right to use it in accordance with the terms of their contract).

The foregoing cases highlight the difference between rights which have vested—rights which are accrued or which have been earned by virtue of public employment—and rights which are contingent—rights which are conditioned upon the happening of some future event, such as an on-the-job injury. It is clear that the doctrine of *Yeazell* applies only where the right to a benefit has vested. Just as unearned annual leave, holiday pay, vacation credits and sick leave do not vest until the "condition" of service is satisfied, we conclude that the right to an accidental disability pension does not vest until the contingent event of injury occurs.

## IV. THE PUBLIC EMPLOYMENT CONTRACT

Having determined that Coplan had no vested right to the accidental disability benefits in existence when he was hired, we must now decide under what circumstances the state can change those benefits. *See generally* Annot., 52 A.L.R.2d 437 (1957); Note, *Public Employee Pensions in Times of Fiscal Distress*, 90 Harv.L.Rev. 992 (1977). Although a contract analysis as applied to public employment has been criticized, *e.g., Christensen v. Minneapolis Mun. Employees Retirement Bd.*, 331 N.W.2d 740, 747 (Minn.1983), we view *Yeazell* as expressly requiring it. The question then becomes under what circumstances may the state modify the contractual relationship between the employee and the public employer? It is hornbook law that all contracts are subject to being circumscribed in the interest of the state pursuant to its police power. *American Federation of Labor v. American Sash & Door Co.*, 67 Ariz. 20, 27, 189 P.2d 912, 917 (1948), *aff'd,* 335 U.S. 538, 69 S.Ct. 258, 93 L.Ed. 222 (1949). The state's power to modify contracts is limited, however, by the contract clause of the Arizona Constitution and the United States Constitution. Ariz. Const. art. 2, § 25; U.S. Const. art. I, § 10. Although the language of each clause is absolute, the United States Supreme Court has held that deference to the state's police power must be implicit within the contract

clause. *Home Bldg. & Loan Ass'n v. Blaisdell,* 290 U.S. 398, 435, 54 S.Ct. 231, 239, 78 L.Ed. 413, 427 (1934).

In balancing the state's police power interest with the interests of the contracting parties to preserve their bargain, the United States Supreme Court has adopted a three-part test:

1. Has the state law operated as a substantial impairment of a contractual relationship?

2. If so, is there a significant and legitimate public purpose behind the legislation?

3. If a legitimate public purpose has been identified, is the adjustment of the rights and responsibilities of the contracting parties based upon reasonable conditions and of a character appropriate to the public purpose justifying the adoption of the legislation?

*Energy Reserves Group, Inc. v. Kansas Power & Light Co.,* 459 U.S. 400, 411–12, 103 S.Ct. 697, 704–05, 74 L.Ed.2d 569, 580–81 (1983). A number of jurisdictions have adopted this view, or variations of it, in considering legislative modifications of public employee pensions. *Nash v. Boise City Fire Dept.,* 104 Idaho 803, 663 P.2d 1105 (1983); *Christensen v. Minneapolis Mun. Employees Retirement Bd.; Halpin v. Nebraska State Patrolmen's Retirement System,* 211 Neb. 892, 320 N.W.2d 910 (1982).

The impairment of contracts analysis properly acknowledges a public employee's reasonable expectancy interest in preserving a disability pension on the terms in existence at the outset of employment. Important benefits, such as accidental disability retirement, most certainly influence decisions to secure public employment. On the other hand, the three-part analysis recognizes the legitimate interest of the state to make reasonable changes in such plans for the "purpose of keeping the system flexible and of accommodating changing conditions while maintaining the integrity of the system." *Singer v. City of Topeka,* 227 Kan. 356, 366, 607 P.2d 467, 475 (1980).

On remand, the trial court should first consider whether the 1980 amendment constituted a substantial impairment of Coplan's contract of employment. In other words, did the 1980 amendment constitute a substantial detrimental change from the statute in effect when Coplan was hired? If no substantial impairment is found, then it must be concluded that the state could validly change the terms of the accidental disability pension. If a substantial impairment is found, the court must then consider whether there is a significant and legitimate public purpose served by the amendment. If no such purpose is proven, an unconstitutional impairment exists and Coplan's benefits will be fixed pursuant to the statute in place at the time of his hire. If a "valid" purpose is found, the trial court must then determine whether the 1980 amendment is a reasonable means to achieve the articulated purpose. Because the state administers the Public Safety Personnel Retirement System, "complete deference to [the] legislative assessment of reasonableness and necessity is not appropriate." *United States Trust Co. v. New Jersey,* 431 U.S. 1, 26–27, 97 S.Ct. 1505, 1519, 52 L.Ed.2d 92, 112 (1977).

This matter is reversed and remanded to the trial court for reconsideration of the local board's decision in light of this opinion. Accordingly, the award of attorney's fees to Coplan is reversed. Each side shall bear its own fees on appeal.

GREER, P.J., and KLEINSCHMIDT, J., concur.