[Civ. No. 67350. Second Dist., Div. Five. Oct. 3, 1983.]

PASADENA POLICE OFFICERS ASSOCIATION et al.,
Plaintiffs and Appellants, v.
CITY OF PASADENA et al., Defendants and Respondents.

Counsel

Gibson, Dunn & Crutcher, Richard C. Cornish and Richard Chernick for Plaintiffs and Appellants.

Stroock & Stroock, & Lavan, William H. Levit, Henry J. Silberberg, Margaret A. Nagle, Ball, Hunt, Hart, Brown & Baerwitz, John R. McDonough, Howard B. Soloway, J. Steven Greenfeld, Fogel, Rothschild, Feldman & Ostrov, Daniel Fogel, Lester G. Ostrov, Jeanne M. Wilson, Richard S. Levin and Rees Lloyd, as Amici Curiae on behalf of Plaintiffs and Appellants.

Victor J. Kaleta, Acting City Attorney, Terrence M. Anderson, Deputy City Attorney, O'Melveny & Myers, Clyde E. Tritt, Karen R. Growdon and John F. Daum for Defendants and Respondents.

Opinion

ASHBY, J.—Plaintiffs are employee organizations and active and retired members of the Pasadena Fire and Police Retirement System (the System). They brought this action for injunctive and declaratory relief and writ of mandate to declare invalid certain amendments to the pension plan as violative of the members' vested contract rights. The trial court rendered judgment for defendants, concluding that the amendments did not impair the members' vested contract rights. Plaintiffs appeal.

The provisions relating to the System are contained in article XV of the Pasadena City Charter. The System provides a basic monthly retirement benefit which at age 50 is equal generally to 2 percent of a member's final compensation for each year of service. Effective July 1, 1969, the charter was amended to provide for a cost of living allowance (COLA) in addition to the basic monthly benefit, calculated to adjust the basic monthly benefit by the annual percentage change in the consumer price index. The COLA benefit contained no cap or limit on such changes; it was fully adjustable to changes in the consumer price index. The 1969 amendments also applied to members who had retired prior to July 1, 1969, provided they elect within 180 days to be governed by the new plan. The plan provided that in addition to the amounts contributed by the employees and the city toward the basic monthly benefit, the employees and the city would each also contribute, for the first 10 years, 1 percent of salary toward the COLA benefit.

After a dramatic rise in COLA benefits due to high rates of inflation, agreement was reached with employee organizations to modify the System in 1977, and amendments were added (1) to increase the contribution rate to 2½ percent until 1987 and (2) to close the System so as to limit the number of members covered by the uncapped COLA benefit.[1] New employees hired after the effective date of the 1977 amendments are covered instead by the state Public Employees' Retirement System (PERS). The employees hired before the 1977 effective date were given an option whether to remain in the System or to join the state PERS. Most chose to remain in the Pasadena system, which had an unlimited COLA in contrast to the PERS COLA, limited to 2 percent per year.

Notwithstanding the increase in contribution rate for the COLA benefit, fiscal experience with the benefit continued to be unfavorable. Contributions toward the COLA benefit were insufficient to cover the amounts then being expended for retirees' COLA benefits. COLA benefits were paid, in effect, by borrowing from other portions of the System.

A citizens' committee appointed to study the problem suggested charter amendments to limit the liability of the System and the city for COLA benefits by placing a cap on such benefits. In June 1981 the voters approved the amendments here at issue limiting the COLA benefits.

The 1981 amendments capped future changes in the COLA, that is, any increase or decrease which becomes effective after July 13, 1981, at 2 percent. Members who retired after June 30, 1969, but before July 14, 1981, were excepted, but members who retired prior to June 30, 1969, were not. Active members who retired after July 13, 1981, were given three options which contained different formulas involving a 2 percent cap. Option three, which the trial court held was adequate to preserve the members' vested contractual rights, provided that a member could cease contributing to the System and could receive an unlimited COLA on a portion of the member's pension calculated by the ratio of the member's years of service prior to July 13, 1981, to his total years of service. For example, a member who had worked for 10 years prior to July 13, 1981, and who thereafter retired with 20 years of service would be entitled to an unlimited COLA on one-half his pension and no COLA on the other half.

This appeal involves three main questions: (1) whether the 1981 amendments impaired the vested rights of active members; (2) whether the 1981

---

[1] As of June 30, 1981, the System had 486 members, of which 177 were active and 309 were retired.

amendments impaired the vested rights of members who retired prior to July 1, 1969; and (3) whether an unrelated 1980 amendment involving actuarial assumptions used in calculating the basic monthly benefit (not the COLA) impaired vested rights.

### ACTIVE MEMBERS

■ It has long been the rule in California that a public employee's pension constitutes an element of compensation and that the right to pension benefits vests upon the acceptance of employment even though the right to immediate payment of a full pension may not mature until certain conditions are satisfied. (*Miller* v. *State of California* (1977) 18 Cal.3d 808, 815 [135 Cal.Rptr. 386, 557 P.2d 970]; *Betts* v. *Board of Administration* (1978) 21 Cal.3d 859, 863 [148 Cal.Rptr. 158, 582 P.2d 614]; *Kern* v. *City of Long Beach* (1947) 29 Cal.2d 848, 855 [179 P.2d 799]; *Dryden* v. *Board of Pension Commrs.* (1936) 6 Cal.2d 575, 579 [59 P.2d 104].) Such a pension right may not be destroyed, once vested, without impairing a contractual obligation of the employing public entity. (*Betts* v. *Board of Administration, supra,* 21 Cal.3d 859.) Very recently the Supreme Court has summarized this rule as follows: "By entering public service an employee obtains a vested contractual right to earn a pension on terms substantially equivalent to those then offered by the employer. [Citations.] On the employee's retirement after he has fulfilled pension conditions an immediate obligation arises to pay benefits earned." (*Carman* v. *Alvord* (1982) 31 Cal.3d 318, 325 [182 Cal.Rptr. 506, 644 P.2d 192].)

■ Although stating that "[a]n employee's vested contractual pension rights may be modified prior to retirement for the purpose of keeping a pension system flexible to permit adjustments in accord with changing conditions and at the same time maintain the integrity of the system," the landmark case of *Allen* v. *City of Long Beach* (1955) 45 Cal.2d 128, 131 [287 P.2d 765], also placed "strict limitation on the conditions which may modify the pension system in effect during employment." (*Betts* v. *Board of Administration, supra,* 21 Cal.3d at p. 864.) "Such modifications must be reasonable, and it is for the courts to determine upon the facts of each case what constitutes a permissible change. To be sustained as reasonable, alterations of employees' pension rights must bear some material relation to the theory of a pension system and its successful operation, *and changes in a pension plan which result in disadvantage to employees should be accompanied by comparable new advantages.*" (*Allen* v. *City of Long Beach, supra,* 45 Cal.2d at p. 131; italics added; *Abbott* v. *City of Los Angeles* (1958) 50 Cal.2d 438, 447-448 [326 P.2d 484]; *Miller* v. *State of California, supra,* 18 Cal.3d 808, 816; *Betts* v. *Board of Administration, supra,*

21 Cal.3d 859; *Allen* v. *Board of Administration* (1983) 34 Cal.3d 114, 120 [192 Cal.Rptr. 762, 665 P.2d 534].)

 The 1981 amendments to the COLA provisions were obviously disadvantageous to the employees. They substantially limited and reduced the protection which had previously been offered by a pension fully adjustable to changes in the cost of living. The city makes no claim that this detriment was compensated by comparable new advantages.[2] Under the test laid down by the Supreme Court in *Allen,* and repeatedly reaffirmed by the Supreme Court, the 1981 amendments substantially reducing the cost of living benefits of the pension plan are invalid.

Defendants contend, however, that the amendments did not impair at all the vested contract rights of the active employees because they purport to be prospective only. It is argued that the pro rata formula in option three expressly preserves the right to an unlimited COLA on that portion of the pension which "already has been earned" by years of service prior to July 13, 1981. Defendants contend that just as a public employee's compensation might be reduced in the future, so also the pension rights which might be earned in the future can be reduced. Defendants argue that the *Allen* test requiring comparable new advantages should be construed to apply only to attempted modifications of pension rights "already earned" and that if such rights are preserved by a pro rata formula then the benefits to be earned in the future can be reduced.

Defendants' construction of *Allen* cannot be reconciled with portions of the *Allen* decision itself or later decisions. One of the amendments invalidated in *Allen* increased each employee's contribution to the retirement system from 2 percent of his salary to 10 percent. (*Allen* v. *City of Long Beach, supra,* 45 Cal.2d at p. 130.) On the same page on which the Supreme Court announced its comparable new advantages test, it invalidated the increase in contribution rate, because "[t]he provision raising the rate of an employee's contribution to the city pension fund from 2 per cent of his salary to 10 per cent obviously constitutes a substantial increase in the cost of pension protection to the employee without any corresponding increase in the amount of the benefit payments he will be entitled to receive upon his retirement." (45 Cal.2d at p. 131.) In other words, where the employee's contribution rate is a fixed element of the pension system, the rate may not be increased unless the employee receives comparable new advantages

---

[2]Defendants do point out that under option three the employee makes no COLA contributions from future salary, but do not claim this can compensate for the loss of a fully adjustable pension.

for the increased contribution. (*Wisley* v. *City of San Diego* (1961) 188 Cal.App.2d 482, 486-487 [10 Cal.Rptr. 765]; *City of Downey* v. *Board of Administration* (1975) 47 Cal.App.3d 621, 631-633 [121 Cal.Rptr. 295]. See also *Glaeser* v. *City of Berkeley* (1957) 148 Cal.App.2d 614, 617 [307 P.2d 61]; *Abbott* v. *City of San Diego* (1958) 165 Cal.App.2d 511, 518-519 [332 P.2d 324]. Cf. *International Assn. of Firefighters* v. *City of San Diego* (1983) 34 Cal.3d 292, 299, 303 [193 Cal.Rptr. 871, 667 P.2d 675] [contribution rate actuarially based rather than fixed].) An increase in an employee's contribution rate operates prospectively only and in effect reduces future salary, yet in *Allen* the Supreme Court struck down such a change on the ground that it modified the system detrimentally to the employee without providing any comparable new advantages. ▉ The contribution rate cases, including *Allen* itself, are wholly inconsistent with defendants' argument that *Allen* means only that comparable new advantages must be provided when benefits already earned are modified retroactively. (See also *Phillis* v. *City of Santa Barbara* (1964) 229 Cal.App.2d 45, 66 [40 Cal.Rptr. 27] ["There is no merit in respondents' claim that the rule of the *Allen* and *Abbott* cases, requiring equal advantages to offset disadvantageous amendments to a pension plan, is confined in its application to employees who have fully earned their pension."].)

▉ Also inconsistent with defendants' theory is the Supreme Court's recent summary of the pension cases stating, "By *entering* public service an employee obtains a vested contractual right *to earn a pension on terms substantially equivalent to those then offered by the employer.*" (*Carman* v. *Alvord, supra,* 31 Cal.3d at p. 325; italics added. See also *California League of City Employee Associations* v. *Palos Verdes Library Dist.* (1978) 87 Cal.App.3d 135, 139-140 [150 Cal.Rptr. 739].) This statement indicates the employee has a vested right not merely to preservation of benefits already earned pro rata, but also, by continuing to work until retirement eligibility, to earn the benefits, or their substantial equivalent, promised during his prior service. The language in *Carman,* "[T]erms substantially equivalent to those then offered" must refer to the rule of *Allen* that while benefits are not absolutely fixed, changes detrimental to the employee must be offset by comparable new advantages.

Although the 1981 amendments are couched in a formula which purports to make only a "prospective" reduction in benefits, the change is nevertheless a substantial reduction in the pension which could have been earned under the 1969 amendments. In *Allen, supra,* 45 Cal.2d at pages 131-132, the city attempted to change from a "fluctuating" pension (tied to the current salary paid for the rank which had been held by the retiree) to a "fixed" pension (tied to the salary previously earned by the retiree); in *Babbitt* v.

*Wilson* (1970) 9 Cal.App.3d 288, 290 [88 Cal.Rptr. 623], the city attempted to change a disability retirement benefit from two-thirds of salary to one-half of salary. These reductions in benefits were held invalid as to employees who had worked under the older more generous system. Here also the benefit has in real terms been reduced. ■ ■ ■ ■ The fact that the reduction is tied by a formula related to the employee's years of service before the effective date of the amendments does not change that reality.[3]

In support of the theory that a "prospective" reduction in benefits is permissible, defendants and the trial court relied upon cases decided before *Allen* v. *City of Long Beach, supra,* and which therefore cannot be regarded as good authority for defendants' argument. In 1947, the California Supreme Court decided *Kern* v. *City of Long Beach, supra,* 29 Cal.2d 848, which held that an amendment completely eliminating pension rights could not constitutionally apply to an employee who had served while the pension system was in effect. In the course of that decision, the Supreme Court stated that pension systems may be modified, concluding, however, that "[t]he permissible scope of changes in the provisions need not be considered here, because the respondent city . . . has repealed all pension provisions." (*Id.,* 29 Cal.2d at pp. 854-855.) It was not until the 1955 decision in *Allen* v. *City of Long Beach, supra,* 45 Cal.2d at page 131, that the Supreme Court, in elaborating on the question not reached in *Kern,* announced the additional requirement that "changes in a pension plan which result in disadvantage to employees should be accompanied by comparable new advantages." (*Id.* See *Cochran* v. *City of Long Beach* (1956) 139 Cal.App.2d 282, 287 [293 P.2d 839].) Defendants rely upon a line of cases decided in the interim, before the *Allen* test was formulated. This line of cases also

---

[3]*Allen* does state that changes may be made in the pension system to maintain its integrity. (*Allen* v. *City of Long Beach, supra,* 45 Cal.2d at p. 131.) A pension system in which benefits are payable only to the extent funded by specified contributions might be able to reduce benefits or increase employee contributions in order to save the system from bankruptcy. (*Houghton* v. *City of Long Beach* (1958) 164 Cal.App.2d 298, 304, 306 [330 P.2d 918].) However, in the absence of a clear and unequivocal declaration in the pension provisions that benefits are payable only to the extent of available funds from specified contributions, the liability to pay promised pension benefits is a general obligation of the city. (*Bellus* v. *City of Eureka* (1968) 69 Cal.2d 336, 348-352 [71 Cal.Rptr. 135, 444 P.2d 711]; *Carman* v. *Alvord, supra,* 31 Cal.3d at pp. 332-333.) Suggestions of fiscal emergency have been rejected on the particular facts of several cases. (*Allen* v. *City of Long Beach, supra,* 45 Cal.2d at p. 133; *Abbott* v. *City of Los Angeles, supra,* 50 Cal.2d at p. 455; *Wisley* v. *City of San Diego, supra,* 188 Cal.App.2d 482, 487; *Frank* v. *Board of Administration* (1976) 56 Cal.App.3d 236, 246 [128 Cal.Rptr. 378].)

Here, too, this case was not tried on the theory that modifications detrimental to the employees' vested rights were necessary in order to save the System and meet city obligations, the trial court having granted plaintiffs' motion to exclude evidence relating to a fiscal emergency theory. The trial court's judgment is based instead on defendants' theory that the amendments did not interfere with vested contract rights at all because they were "prospective."

involved the Long Beach City Charter. Prior to its amendment in March 1945, the charter had provided that a member of the police or fire departments was entitled to a 50 percent pension after 20 years of service, and to a pension with an additional 1⅔ percent for each year of service beyond 20 years, up to 30 years (in other words, up to a 2/3 pension with 30 years of service). The question presented in *Palaske* v. *City of Long Beach* (1949) 93 Cal.App.2d 120 [208 P.2d 764], was whether an employee as to whom the 1945 repeal of all pension rights was ineffective by virtue of the *Kern* decision, was entitled not only to complete his 20 years of service after the amendment so as to be eligible for a 50 percent pension, but also to earn the additional 1⅔ percent pension for each year of service beyond 20. Relying upon language in *Kern* that a pension system may be modified, the *Palaske* court concluded "it appears that it was within the power of the city to modify its pension plan to provide that on and after the effective date of the amendment an employee who was entitled to retire might do so or not, as he saw fit, but that if he chose to continue as an employee he could not thereby earn any additional pension above that to which he was entitled on the effective date of the amendment. As stated by the Supreme Court, the employee had the vested right only to a substantial or reasonable pension. His contractual right to such a pension has not been impaired by legislation which, operating prospectively, merely withdraws any right or option to earn a bonus by continuing in employment after he has become eligible for retirement." (*Id.,* 93 Cal.App.2d at p. 132.)

Before 1955, two additional Court of Appeal cases involving the same section of the Long Beach City Charter followed the holding of *Palaske*. ([*Albion*] *Allen* v. *City of Long Beach* (1950) 101 Cal.App.2d 15, 20 [224 P.2d 792]; *Allstot* v. *City of Long Beach* (1951) 104 Cal.App.2d 441, 444 [231 P.2d 498].) When the Supreme Court decided the [*Manning*] *Allen* case in 1955, it referred briefly to these decisions, without overruling them, stating only, "[T]he series of decisions culminating in *Allstot* v. *City of Long Beach,* . . ., which upheld a charter amendment depriving employees of the opportunity to earn an increase in their pensions by remaining in service after reaching retirement age, are distinguishable from the present case." (*Allen* v. *City of Long Beach, supra,* 45 Cal.2d at p. 133.) After *Allen,* one 1958 Court of Appeal case involving the same *Palaske* provision of the Long Beach City Charter concluded that the *Palaske* line of cases had not been overruled and was still good law. (*Houghton* v. *City of Long Beach, supra,* 164 Cal.App.2d 298, 310-312.) The *Houghton* decision was based in part, however, upon the city's reliance on the *Palaske* line of cases since 1949. (*Id.,* 164 Cal.App.2d at p. 311.)

In our opinion, the *Palaske* line of cases cannot be reconciled with the comparable new advantages test of *Allen* and subsequent cases. The *Palaske*

line should be limited to the Long Beach City Charter provision there in question in light of that city's reliance upon *Palaske.* The *Palaske* line should not be extended and does not support the amendment in this case which prevents the members of the Pasadena Fire and Police Retirement System from ever earning the fully adjustable pension promised them during their 1969 to 1981 years of service.[4]

### PRE-1969 RETIREES

The 1969 amendments gave the COLA benefit to the pre-1969 retirees "upon the election by the member or his surviving wife within 180 days of the effective date of this amendment" to be governed by the modified system. (Pasadena City Charter, art. XV, §§ 1508(b), 1509.8.) Accordingly, all eligible retirees and surviving spouses were sent a form in July 1969 for electing to accept the 1969 amendments. All but one returned the signed form electing to be governed by the 1969 amendments.[5]

▉▉ ▉▉ These members thereafter received substantial raises in their pensions, fully reflecting increases in the cost of living, pursuant to the COLA benefit.[6] However, under the 1981 amendments, these pensions are limited in the future to a maximum 2 percent change on account of the COLA benefit. ▉▉ We hold the 1981 amendments cannot constitutionally be applied to the pre-1969 retirees who elected to be governed by the 1969 amendments.

Since these members had completed all their years of service and retired before any COLA benefit was enacted, they never gave services with the reasonable expectation that their pensions would be adjusted for changes in the cost of living. Thus, they had no vested contractual right, based on *the contract in effect during their employment,* to continuation of the COLA benefit. (*Olson* v. *Cory* (1980) 27 Cal.3d 532, 542 [178 Cal.Rptr. 568, 636 P.2d 532].)

However, the right of the pre-1969 retirees to continuation of the COLA benefit is based on a different contract. Prior to the exercise of their election,

---

[4]Since we find the 1981 amendments do not satisfy the *Allen* test as to active employees, we need not consider plaintiffs' argument that the city is estopped to change the COLA benefit by virtue of the members' reliance in electing in 1977 to remain in the Pasadena system rather than join the state PERS.

[5]However, on July 25, 1969, the declaration of Rollin K. Anderson electing the 1969 amendments was returned to him at his request.

[6]It is well established that the legislative body may grant an increase in pension to one who has completed rendition of services and is already in a pensionable status. (*Sweesy* v. *L. A. etc. Retirement Bd.* (1941) 17 Cal.2d 356, 361 [110 P.2d 37]; *Nelson* v. *City of Los Angeles* (1971) 21 Cal.App.3d 916, 918-919 [98 Cal.Rptr. 892].)

these members were receiving, under the existing system, a fixed pension which could not be reduced. (See *Terry* v. *City of Berkeley* (1953) 41 Cal.2d 698, 703 [263 P.2d 833].) Under the 1969 amendments, pensions were rendered fully adjustable, up *or down* with the changes in the cost of living. By electing to come under the 1969 system, these members gave up their fixed pension and subjected themselves to the potential of a *reduction* in their pension should the cost of living index decline. By so agreeing, the retirees gave consideration for the city's promise to pay a fully adjustable pension (Civ. Code, § 1605) and a contract was formed, a contract entitled to constitutional protection against impairment. (See *Kern* v. *City of Long Beach, supra,* 29 Cal.2d at p. 853.)

Defendants persuaded the trial court that no contract was formed because the contract is illusory, the theory being that the retirees' election was and is revocable at will at any time, therefore the retirees did not give up anything, hence no mutuality of obligation and no contract. We conclude that defendants' interpretation of the election requirement is unreasonable and is not supported by any substantial evidence. ■ The interpretation of a written instrument is a question of law for the appellate court. Even where extrinsic evidence in aid of interpretation was offered in the trial court, the appellate court is not bound by the trial court's findings if the extrinsic evidence is not in conflict, is not substantial, or is inconsistent with the only interpretation to which the instrument is reasonably susceptible. (*Parsons* v. *Bristol Development Co.* (1965) 62 Cal.2d 861, 865 [44 Cal.Rptr. 767, 402 P.2d 839]; *Glendale City Employees' Assn.* v. *City of Glendale* (1975) 15 Cal.3d 328, 340 [124 Cal.Rptr. 513, 540 P.2d 609]; *In re Marriage of Fonstein* (1976) 17 Cal.3d 738, 746-747 [131 Cal.Rptr. 873, 552 P.2d 1169].)

The 1969 charter amendments specifically provided that the COLA benefit would go only to those pre-1969 retirees who elected, within 180 days of the effective date of the amendments, to be governed by such provisions. A retiree who failed to file an election within 180 days would be barred from receiving the benefit because of failure to comply with the 180-day requirement. Yet, under defendants' interpretation, the 180-day requirement is meaningless, and anyone who chose not to elect the benefits was foolish, because he or she could have had all the advantages of the 1969 amendments without ever giving up the right to revert to the prior fixed pension if it became advantageous to do so. Defendants' contention that the election requirement was a mere "administrative convenience" does not make sense. If defendants' interpretation were correct, the administratively convenient course would have been to grant COLA increases automatically to the retirees without requiring an election, while considering the former fixed pen-

sion as a floor beyond which the adjustable pension could not be reduced in the event of declines of the cost of living index.[7]

Although neither the 1969 charter amendments nor the 1969 election forms expressly state that the election is "irrevocable," neither do they state that the members' election is revocable at will. In the authorities cited by defendants, the contract expressly provided that one party's performance was at will. (See *County of Alameda* v. *Ross* (1939) 32 Cal.App.2d 135 [89 P.2d 460]; *Shortell* v. *Evans-Ferguson Corp.* (1929) 98 Cal.App. 650 [277 P. 519].) ▓ In the absence of an express unilateral right of unrestricted cancellation, the obligations in a contract should be presumed to be real and not illusory (see Civ. Code, §§ 1614, 1615).[8] The election form filed by the retirees states that "I hearby freely and voluntarily elect to accept all of the modifications provided in the 1969 Amendments to Article XV of the City Charter in accordance with the election requirements of Section 1508(a) and (b) thereof." (See *Lyons* v. *Workmen's Comp. Appeals Bd.* (1975) 44 Cal.App.3d 1007, 1012, 1021 [119 Cal.Rptr. 159].) By so electing, the retiree consented to a potential reduction of pension in the event of a decline in the cost of living index, and this was sufficient consideration to support a contract.

Defendants rely heavily on the fact that one retiree, Rollin Anderson, who originally elected to receive the COLA subsequently revoked his election. However, this example does not support defendants' contention that the election was revocable at will and hence the contract illusory. Aside from the parties' stipulation that Anderson "subsequently revoked his election," the only evidence on the point was a letter from the secretary of the retirement board to Anderson dated July 25, 1969, which states: "In accordance with your request, I am returning the 'Declaration of Retired Members' which you signed and submitted." No evidence was introduced as to the ground for Anderson's request. He could have had legal grounds for revocation, in which case his revocation does not show that the election was revocable at will. Moreover, Anderson's change of mind came well within

---

[7]Plaintiffs' witnesses testified without contradiction that in the negotiations in drafting the 1969 amendments, the city administration insisted that the COLA be allowed to reduce a pension as well as increase it, and the city attorney insisted upon the election requirement because the retirees would be giving up their fixed pension.

[8]Defendants point out that subsequent charter amendments in 1977 and 1981 required elections which were expressly made irrevocable. However, the provisions of other legislation years later is of little value in interpreting the 1969 amendments. Similarly, a letter of the city attorney interpreting the provision was prepared in May 1982, specifically for this litigation and is of little or no significance as a contemporary administrative construction of the 1969 amendments.

the 180-day period which the charter allowed for the retirees to make their decision.

 We conclude therefore that there is no substantial evidence to support defendants' unreasonable construction of the election requirement to be a meaningless gesture rendering the contract illusory. In making their election to be governed by the 1969 amendments, the pre-1969 retirees gave sufficient consideration to bind defendants to pay the promised fully adjustable pension. Such contract was constitutionally protected against impairment.[9]

### ACTUARIAL ASSUMPTIONS

Plaintiffs also challenge a 1980 amendment to section 1503 of the charter, which concerned the actuarial assumptions used in calculating employees' contributions to the basic monthly benefits (not the COLA).

Section 1509.9 provides for the normal rate of contribution by the employee: "The normal rates of contributions by members to the Retirement System shall be such as will provide an average annuity at age 50 equal to 1/100 of the final compensation of members according to the tables adopted by the Retirement Board and modified from time to time pursuant to this Article, for each year of service rendered after entering the System, and shall be required as a deduction from the compensation of each member throughout the member's membership." The city contributes the remainder of the contributions required during any fiscal year. (§ 1509.92.)

Section 1503 provides for the retirement board to approve mortality service and other tables and rates of contributions from members as recommended from time to time by the actuary. Section 1509.93 authorizes the board periodically to make an actuarial investigation into the mortality service and other experience under the System and any necessary revisions of the tables and rates being used by the System.

Since a member's basic retirement allowance is one-fiftieth of the member's final compensation times the member's number of years in service (§ 1509.15), a critical actuarial assumption is the estimate of the final com-

---

[9]The trial court also held that even assuming mutuality of obligation, no contract binding on the city was created due to lack of compliance with the contract procedures of the city charter, citing *City of Pasadena* v. *Estrin* (1931) 212 Cal. 231 [298 P. 14]. However, like the other provisions of the pension system, the election requirement was itself contained in the charter. The provisions of a public employee pension system give rise to contractual obligations and are not governed by the ordinary contract provisions of the charter.

pensation of active members. Prior to July 1, 1977, the retirement board did not use a salary inflation assumption in calculating either member contributions or city contributions. According to the testimony of the actuary, a change in guidelines of the American Academy of Actuaries in June 1976 indicated that inflation should be reflected in all assumptions that inflation affected. On the recommendation of the actuary, the board after July 1, 1977, took salary inflation into account in calculating the city's required contributions. However, at that time the actuary did not recommend that the same assumption about salary inflation be used in calculating employee contributions, due to uncertainty over legal ramifications.[10]

On June 9, 1980, the retirement board unanimously decided that as of June 30, 1980, "the actuary in determining contribution rates for the members and the City shall include an equal inflation factor in the future salary increase assumption."

Pursuant to the recommendation of the charter study committee, section 1503 of the charter was amended to require the board to apply the same assumptions to both the employee and the city contributions. The challenged amendment added to section 1503 by providing "[t]he same actuarial tables, rates, valuations and assumptions, including but not limited to assumptions concerning future investment return and salary inflation, shall be used in calculating member contributions pursuant to Section 1509.9 hereof as are used in calculating city contributions pursuant to Section 1509.92 hereof." The new salary inflation assumption had the effect of increasing employee contributions by about 50 percent for younger employees. (E.g., from 6 percent to 9 percent.)

Plaintiffs contend that because the salary inflation assumption substantially increased employees' contribution rates, without any comparable new advantage, it violated vested contract rights under *Allen* v. *City of Long Beach, supra,* 45 Cal.2d at pages 130-131, and *Wisley* v. *City of San Diego, supra,* 188 Cal.App.2d at page 486.

However, this case is distinguishable because at all pertinent times the charter provided that the employees' contribution was to be an amount actuarially sufficient to provide an average annuity at age 50 equal to one one-

---

[10]The charter study committee reported in May 1980 that the legal doubt concerned whether employee meet-and-confer requirements applied to a change in actuarial assumptions affecting employee contributions. The actuary testified at trial that his earlier recommendation against changing the assumption as to employee contributions was based on uncertainty whether a projected 40 to 50 percent increase in employee contributions under such new assumption would be legally invalid.

hundredth of final compensation according to the tables adopted by the retirement board.[11] The employees' contribution was not absolutely fixed but was dependent upon actuarial tables and assumptions, which the board was authorized by the charter to determine and revise from time to time. As stated by the trial court, "Since the authority of the Retirement Board to adopt and approve actuarial assumptions has been a condition of the entitlement of members to pension benefits at all pertinent times, the decision of the Retirement Board, in the exercise of that authority, to use an assumption as to salary inflation in calculating members' contribution did not deprive plaintiffs or any System member of any vested right, nor did the subsequent incorporation into the Charter of the specific requirement that such an assumption be used."

The trial court presaged the Supreme Court's recent decision in *International Assn. of Firefighters* v. *City of San Diego, supra,* 34 Cal.3d 292. There, as here, the contribution rate required of the employees was substantially increased based upon the advice of the retirement system's actuary that, pursuant to the new guidelines of the profession, salary inflation be taken into account. The Supreme Court rejected the employees' argument that the increase in the contribution rate impaired their vested contract rights. The court held the increase was authorized by the express provisions of the retirement system which provided for an actuarially based rather than a fixed contribution rate. (*Id.,* at pp. 299-303.)

That portion of the judgment relating to the actuarial assumption provisions of section 1503 is affirmed. Those portions of the judgment upholding the application of sections 1509.8 and 1508.81 as amended effective July 13, 1981, are reversed with directions to enter judgment for plaintiffs. The parties to bear their own costs on appeal.

Stephens, Acting P. J., and Hastings, J., concurred.

A petition for a rehearing was denied November 1, 1983, and respondents' petition for a hearing by the Supreme Court was denied January 19, 1984.

---

[11]The actuary testified that tables adopted by the retirement board was a term synonymous with actuarial assumptions.