[No. F001948. Fifth Dist. Dec. 3, 1986.]

ASSOCIATION OF BLUE COLLAR WORKERS et al.,
Plaintiffs and Respondents, v.
TED WILLS et al., Defendants and Appellants.

## COUNSEL

James A. McKelvey, City Attorney, and Edwin A. Oeser, Assistant City Attorney, for Defendants and Appellants.

Bennett & Sharpe and Katherine Hart for Plaintiffs and Respondents.

## OPINION

## BALLANTYNE, J.—

### INTRODUCTION

In 1980 the City of Fresno discovered $39 million in unfunded liability in its pension cost of living adjustment fund (COLA). The COLA had always been a partially funded system. Independent actuaries recommended that the COLA be fully funded in light of then rampant inflation. The COLA enabling ordinance is silent as to whether it should be fully or partially funded.

Over $16 million of the unfunded liability accumulated from past services rendered by retired and active employees. The remaining unfunded debt would accrue in the future. The question presented in this case centers on whether the employees or the city must pay for the unfunded liability accrued from past services to create a fully funded COLA. The issue of whether payment must be shared depends on whether the employees have a vested right in the pension plan for the city to pay these moneys under the terms of the municipal code.

### FACTS AND PROCEEDINGS BELOW

The City of Fresno adopted its current pension plan in 1939 by ordinance No. 2502. Beginning in 1942, the city has been charged with the duty of

making actuarial valuations of the entire retirement system. In 1965 the council passed ordinance No. 6703 implementing a cost of living adjustment to retiree pensions.

Although the cost of living adjustment was initially capped at 2 percent, this was subsequently revised to 3 percent and finally to 5 percent. The COLA ordinance, municipal code section 2-1840.4, has otherwise remained the same.

From its inception the COLA has been only a partially funded system. In its opening brief to the trial court, the city described the funding of the COLA as follows: "[T]he program was funded by an amount of monies derived from excess interest earnings and member and City contributions which would pay the cost of living benefit for the following ten years to the 138 persons receiving pensions, and build up reserve with which to continue the benefit for an additional five years. . . . [A]n active employee and member of the System in 1967 was making contributions to a program at an actuarily established rate which would only pay for cost of living benefits to members who had retired before 1966, and only for a period of ten years. Future cost of living benefits for active members of the System were not considered in establishing City or member rates of contribution."

Within 10 years the number of retired employees doubled and the number of active employees also increased dramatically. The retirement board increased city and member contribution rates in 1977. The increase was based on an actuarial recommendation that the system needed "stronger funding." Consistent with the formula set forth in section 2-1840.4, subdivision (e), both parties contributed 50 percent of total contributions made between 1966 and 1980.

The retirement board received a new actuarial report in the spring of 1980 that recommended full funding, rather than partial funding, of the COLA. The report identified unfunded liabilities totalling $39,211,660 for the first time in the history of the fund. The actuaries apportioned the debt between employee members of the retirement system according to their status as retired, currently active past service members, and future service active members. The debt was apportioned as follows:

| | | |
|---|---|---|
| (1) Present retired employees | | $11,239,402 |
| (2) Past service of active employees | | 5,026,877 |
| (3) Future service of active employees | | 22,945,381 |
| | TOTAL | $39,211,660 |

The actuaries suggested that all unfunded future debt be shared equally between the parties and that the city absorb present and past unfunded

liability in the COLA fund. Pursuant to further recommendation of the actuaries, the retirement board proposed an amendment to the COLA ordinance that would have increased employee contributions to the system. The employees failed to endorse the proposal which was, in turn, rejected by the city council. On May 24, 1982, the city council passed a resolution splitting the entire $39 million in debt evenly between the employees and the city.

The employees, through various bargaining units and unions, filed a writ of mandate in June to block withholding from their paychecks to finance the unfunded liability. They asserted that the city's action was an unconstitutional impairment of contract under article I, section 9 of the California Constitution and inconsistent with the terms of the municipal code.

There was no testimony presented to the trial court below. Both parties stipulated at the hearing that all points and authorities, the petition, the answer, declarations, and attached documents could be received as evidence by the court. This included a copy of the pension portion of the municipal code and the actuarial report. The city submitted copies of resolutions by the retirement board. The trial court made its findings upon the submitted record and the oral argument of counsel.

In a thorough and scholarly opinion, the trial court found that the COLA enabling section was silent on the subject of full or partial funding. Unlike the basic pension system, municipal code section 2-1840.4, subdivision (e), does not liquidate unfunded liability. The section fails to expressly authorize the board to fund actuarial estimates of unfunded liability. The appellant city strongly rejects the trial court's bifurcated analysis of the pension system as contrasted to the COLA system. It argues that the entire system is actuarially based. Although it contrasted the basic pension with the COLA, the trial court did find that the retirement system was actuarially based.

The trial court then found that although the contract clause of article I, section 9 of the California Constitution would not prevent COLA contributions to fund current and future needs of the system, no benefits were conferred to pension members for payments withheld to fully fund the system for past liabilities. As commendable as a fully funded system would be, section 2-1840.4, subdivision (e), does not authorize a fully funded system. Only through amendments to the COLA system could a fully funded system be created.

The trial court found that increases in contributions to cover retired employees and past service rendered by current active employees under the council action was a detriment not offset by any corresponding advantage.

The peremptory writ of mandamus issued by the court prevented withholding of moneys from employee paychecks to fund liability for the past service of retired and active members to finance COLA unfunded liability.

■ Before analyzing the merits of the appeal, one contention by the appellant city must be put to rest. The city argues that the trial court engaged in an improper, sua sponte analysis of the municipal code pension sections. The city correctly states that the employees made no argument at the hearing concerning an analysis of the code. The employees, however, did tender a statutory analysis of the pension scheme that attacked the propriety of the city's action. The issue was first raised in the original petition for mandamus and then again in the employees' supplemental brief. The deputy city attorneys at the hearing unequivocally stipulated that these documents were part of the record submitted to the trial court.[1]

In fact, a proper treatment of the question of who must pay for the unfunded liability in the COLA fund would be impossible without analyzing the statutory scheme.

The city asserts that its action in evenly splitting the $39 million of unfunded liability in the COLA fund is constitutionally justified by recent case law. It further claims that the COLA fund and basic pension are both part of one actuarially based system. Under that single system, section 2-1840.4, subdivision (e), provides for a 50 percent split of liability for COLA benefits. The actuarial recommendations have customarily been followed by both parties.

The employees respond that the city's action inhibited contractual rights by forcing retroactive payment for past liabilities. They claim that although the pension fund is actuarially based, the COLA fund is not. Because there are two separate funds, the city could not unilaterally apply pension actuarial rules to the COLA fund without express provision in the code permitting the city to use such actuarial rules.

## DISCUSSION

### I.

### THE CITY CHANGED THE COLA SYSTEM.

■ Where a public entity creates a pension system, the right to that pension immediately vests when an employee accepts employment. The

---

[1]The city further contends that the trial court interpreted section 2-1840.4, subdivision (e), to require funding on a year-by-year basis when the issue was not tendered by either party. It also argues that the trial court improperly discussed the lack of an amortization reserve fund in the COLA when that issue was not raised by the parties. The first issue is not a fair characterization of the trial court's order which merely limited impoundment of paycheck funds to pay for past unfunded COLA liabilities. The second issue is directly germane to an analysis of the statutory scheme.

employee, of course, must then fulfill his or her obligations and meet all conditions necessary to mature the pension. (*Pasadena Police Officers Assn. v. City of Pasadena* (1983) 147 Cal.App.3d 695, 701 [195 Cal.Rptr. 339]; *Miller* v. *State of California* (1977) 18 Cal.3d 808, 815 [135 Cal.Rptr. 386, 557 P.2d 970]; *Betts* v. *Board of Administration* (1978) 21 Cal.3d 859, 863 [148 Cal.Rptr. 158, 582 P.2d 614]; *Kern* v. *City of Long Beach* (1947) 29 Cal.2d 848, 855 [179 P.2d 799]; *Dryden* v. *Board of Pension Commrs.* (1936) 6 Cal.2d 575, 579 [59 P.2d 104].) ■ A pension system may be modified prior to employee retirement for the limited purpose of keeping the system flexible and to maintain the integrity of the system. (*International Assn. of Firefighters* v. *City of San Diego* (1983) 34 Cal.3d 292, 300-301 [193 Cal.Rptr. 871, 667 P.2d 675]; *Wallace* v. *City of Fresno* (1954) 42 Cal.2d 180, 184 [265 P.2d 884]; *Packer* v. *Board of Retirement* (1950) 35 Cal.2d 212, 214 [217 P.2d 660]; *Kern* v. *City of Long Beach, supra,* 29 Cal.2d 848, 854-855.)

Before employee pension rights can be detrimentally affected, the California Supreme Court has adopted a formula requiring that commensurate benefits be given the employee to prevent an unconstitutional impairment of contractual obligations between the city and the employee. This principle is set forth clearly in *Abbott* v. *City of Los Angeles* (1958) 50 Cal.2d 438, 453 [326 P.2d 484] which stated the rule as follows: "As made clear by the cases already cited, it is by advantage or disadvantage to the individual employees whose already earned and vested pension rights are involved that the validity of attempted changes in those rights depends, and benefits subsequently obtained by other employees cannot operate to offset detriments imposed on those whose pension rights have theretofore accrued." (50 Cal.2d at p. 453.)

■ Any analysis of whether there has been a change in the retirement system must begin with a review of the relevant municipal code sections.[2]

---

[2]Municipal Code section 2-1840.4 provides in pertinent part: "(e) Such increases in allowances as shall be payable pursuant to this section shall be funded insofar as possible from moneys in the contingency reserve of the Retirement Fund which are in excess of one per cent of the total assets of the Retirement System on July 1, 1966, and by such moneys from such contingency reserve as shall be determined by the Retirement Board as of June 30 of each year thereafter. Any additional moneys required for such increases shall be provided by additional contributions to the Retirement Fund, at rates fixed by the Retirement Board as it shall determine to be necessary, to be shared equally between the City and the contributing members, and to be designated 'cost of living contributions.' The individual members' contributions shall be graded in proportion to the member's normal contributions.

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"(g) The rates of cost of living contributions of members shall not be combined with the normal rates of contribution, but shall be separately stated. A separate accounting shall be maintained of the accumulations of such contributions and the interest thereon, and such accumulations shall not be included in the accumulated contributions of the member in the

The trial court found that there was no method within section 2-1840.4 to finance unfunded liability within the system. It appears to be undisputed by the parties that there was unfunded liability from the inception of the COLA fund. Although section 2-1840.4, subdivision (e), provides for a 50 percent split of contributions between the city and its employees, this split is only for "increases in allowances." The employees argue at great length that funding past liabilities in the system bears no relationship to "increases."

As the trial court correctly pointed out in its statement of decision, the COLA system appears to have no express method for funding past accrued liabilities. The city picked up the unfunded liability in the original pension system. In effect, the city only required active employees serving at the inception of the pension plan in the 1930's to pay for the future debt of the system. This original debt was covered by municipal code sections 2-1825, 2-1821, and 2-1822.

The trial court was correct in its finding that the entire pension system, including the COLA fund, is actuarially based. Section 2-1840.4, subdivision (g), expressly holds that an accounting shall be made of the COLA system. This accounting, however, is to be separate from that done for the entire pension system. The parallels between section 2-1840.4 and the underlying pension system are glaring. Given the overall statutory scheme, it is unlikely that the city failed to account for the unfunded liability of the COLA system when it was initiated.

Section 2-1840.4, subdivision (i), points the way out of this statutory quagmire. Subdivision (i) provides that payments of the city provided for in the COLA system are obligations of the city and funds necessary for the COLA system are to be appropriated in the manner set forth in section 2-

---

computation of any retirement allowance.

"· · · · · · · · · · · · · · · · · · · ·

"(i) The payments of the City provided for in this section are hereby made obligations of the City, the funds necessary therefor to be appropriated and provided in the manner specified in Section 2-1825 for appropriating and providing other City contributions to the Retirement Fund."

Section 2-1825 provides in pertinent part: "GUARANTY. The payments of the city into the Fresno City Employees' Retirement Fund, as provided in Section 2-1821 to 2-1824 thereof, are hereby made obligations of the city. . . ."

Section 2-1821 provides in pertinent part: "(a) There shall be paid into the Retirement Fund, by contributions of the City, amounts necessary to pay all pensions and other benefits allowable under the Retirement System to members on account of current service, and not provided by members' accumulated contributions derived from the normal rates of contribution provided for in Section 2-1817. . . ."

Section 2-1822 provides in pertinent part: "CITY CONTRIBUTION FOR PRIOR SERVICE. There shall be paid into the Retirement Fund, by contributions of the city, the amounts necessary to pay all pensions and all other benefits allowable under the Retirement System to members on account of prior service. . . ."

1825 "for appropriating and providing *other* City contributions to the Retirement Fund." (Italics added.)

The city attorney argues with considerable force that the retirement system is one, actuarially based, integral system. If the city is correct, the COLA fund is merely a different part of a single overall pension plan. This argument is supported by the fact that section 2-1825 is incorporated into the COLA system. Section 2-1825 is a guaranty section. It, in turn, incorporates sections 2-1821 through 2-1824. Both sections 2-1821 and 2-1822 make contributions by the city to the retirement board for past service an obligation of the city for current service and prior service members. The operative language is instructive and nearly identical in both sections. The city is responsible to make contributions for all amounts necessary to fund current and past service liability for all pensions and "*all other benefits* allowable under the retirement system." (Italics added.)

Following the city attorney's argument that the entire system is an integral whole, the fact that section 2-1840.4, subdivision (i), incorporates sections 2-1825, 2-1821, and 2-1822 is logically consistent. More importantly, it reveals an intention by the city to cover past unfunded liabilities not only for the pension system but for the COLA system as well. Sections 2-1821 and 2-1822 are not limited in their effect to the underlying pension, but expansively include "all other benefits." Although a COLA system was not in effect at the time these two sections were enacted, the city has manifested an express intent to cover past unfunded liability in the entire pension system.

If section 1840.4 incorporates sections 2-1825, 2-1821, and 2-1822, then the city has an obligation to make contributions for past unfunded debts. Construing section 2-1840.4, subdivision (e), as requiring 50 percent contributions for all debt, past and future, is detrimental to the employees. They have lost contributions to the COLA required to be made by the city. Masking the debt as an actuarial requirement and asserting that the entire system is controlled by actuaries does not cure the impairment to contract. Such a construction also ignores the statutory scheme set forth for financing past unfunded debt. The city's action has changed the COLA system. The question remains as to whether the employees received any corresponding benefit.

## II.

### OFFSETTING BENEFITS WERE NOT CONFERRED.

Under the above analysis, the city's action in requiring the employees to fully fund a system that had been partially funded since its

inception by levying contributions for past services rendered by the employees was an impairment of a vested pension right without any corresponding benefit.

Theoretically, all COLA benefits accrue because the cost of living index has risen. The COLA merely follows the rate of inflation. One could argue that all past unfunded liability in the COLA is the result of "increases" that accumulated, but for which no one paid. In effect, the employees have been getting the benefit of COLA "increases" without making any payments into the system. They have gotten the so-called benefit of the bargain. By requiring the employees to pay their 50 percent contribution of the unfunded debt, the city is merely correcting its earlier failure to identify the debt. Each side should pay its 50 percent share of the debt as set forth in the unequivocal language of section 2-1840.4, subdivision (e). Any distinction between past or future unfunded debt is artificial.

As enticing as this theory appears to be, it is not supported by the case of *Bellus* v. *City of Eureka* (1968) 69 Cal.2d 336 [71 Cal.Rptr. 135, 442 P.2d 711]. *Bellus* also involved an attempt by a city to have employees pay for the unfunded liability that had accrued in the city's pension system. (69 Cal.2d at p. 352.) The city in *Bellus* was faced with a statutory scheme that permitted increases in the pension payments by employees only after they had voted for increases. If the employees failed to vote for increases, their pension was reduced in a pro rata manner to cover the deficiency between available funds and accrued benefits. The city asserted in *Bellus* that it could only finance the unfunded debt after the employees had voted for increased contributions. The Supreme Court rejected this argument. It found that a charter city, possessed of plenary powers to adopt pension systems, was liable for pension payments which it had led its employees to reasonably expect. The *Bellus* court acknowledged that the insufficiency within the pension fund may have resulted from mere oversight. Nevertheless, the court found that the city bore a continuing obligation to contribute to the fund and to fulfill unfunded claims set up by the pension system.

Here, there has been no showing by the city that any benefit would accrue to its employees by the adoption of the "full" funding of the COLA system. *Wisley* v. *City of San Diego* (1961) 188 Cal.App.2d 482 [10 Cal.Rptr. 765] sets forth a straightforward standard for courts to follow in determining whether increased contributions add corresponding benefits to members of the pension system. "The defendants have not shown, nor have they attempted to show, that any of the alleged benefits were actually beneficial to any of the plaintiffs involved in these actions, and they have not shown that the amendments increasing the percentage of salary contributions were necessary to preserve the integrity or successful operation of the pension

program. In the absence of such a showing, and in the light of the authorities hereinabove cited, it follows that the amendments in question imposed a detriment without a commensurate benefit and therefore cannot be sustained as reasonable as applied to the plaintiffs in these actions. The finding of the trial court in this regard was supported by the evidence and its judgment was in accord with the law." (*Id.* at p. 487.) (See *Betts* v. *Board of Administration, supra,* 21 Cal.3d at p. 864.)  ■  A city bears the burden of proof to show that increases are necessary to preserve the integrity of the system.

■  In the instant action, the city has failed to show that any corresponding benefit accrued to the employees when it imposed the burden of paying for past unfunded liability in the COLA system. As we will discuss below, this burden-benefit analysis, used by the trial court below, has not been abrogated by recent case law. The only argument remaining for the city to fall back upon is the fiscal integrity of the COLA system. There was no evidence submitted to the trial court that the increase in COLA contributions by employees for past unfunded liability resulted in any significant benefit.

## III.

### THE SYSTEM WAS NOT SUFFICIENTLY IMPERILED TO JUSTIFY AN INCREASE IN COLA CONTRIBUTIONS FOR PAST UNFUNDED LIABILITY.

■  Pension laws enacted by city ordinance constitute contract rights in California. (*Wallace* v. *City of Fresno, supra,* 42 Cal.2d 180, 183; *Kern* v. *City of Long Beach, supra,* 29 Cal.2d 848, 853.) Modifications in that contract are permitted if they are reasonable. (*Wallace* v. *City of Fresno, supra,* 42 Cal.2d at p. 183; *Kern* v. *City of Long Beach, supra,* 29 Cal.2d at p. 853; *Betts* v. *Board of Administration, supra,* 21 Cal.3d 859, 864.)

Recent California cases have upheld increases in pension plan contributions. *International Assn. of Firefighters* v. *City of San Diego, supra,* 34 Cal.3d 292 recently found that employees have no vested right to frozen contribution rates in pension plans. *Pasadena Police Officers Assn.* v. *City of Pasadena, supra,* 147 Cal.App.3d 695 held that actuarial assumptions used in calculating basic contributions to COLA's could be changed. *Pasadena Police Officers* specifically found that retirement boards had the power in actuarially based systems to increase rates to account for the future effects of inflation on salaries which in turn affect COLA's. (147 Cal.App.3d at pp. 709-711.) Neither of these cases, however, involves the issue of retrospective assessment of contributions to pay for past unfunded liability.

■ The city contends that *Firefighters* is dispositive and mandates reversal. Because the entire system is actuarially based, the city merely seeks to increase rates for unfunded liability. Whether such liability is past or present is irrelevant because the 50 percent split of liability between the city and its employees is consistent with section 2-1840.4, subdivision (e).

The employees' response to this position is convincing. They distinguish *Firefighters* on the crucial ground that there the employees had failed to identify exactly which employee rights had vested. There also, the City of Pasadena was merely increasing employee contributions to achieve an even split of future liability consistent with the terms of the Pasadena Municipal Code.

Here, in contrast, the nature of the vested right has been identified. It is unfortunate that the unfunded liability was not identified earlier. In fact, however, it was a built-in and overlooked part of the COLA from its beginning. Pursuant to sections 2-1840.4, subdivision (i), 2-1825, 2-1821, and 2-1822, the city had the obligation to make the COLA fully funded from its inception but failed to do so. The right vested in the employees is their reasonable expectation that the city would meet its statutory obligations to finance the unfunded liability for past accumulated debt.

The city attempts to cast the issue of full funding of the COLA in light of simple economic necessity. To maintain the integrity of a pension system, modifications are permitted. ■ The issue then turns on how reasonable the proposed change would be: "An employee's vested contractual pension rights may be modified prior to retirement for the purpose of keeping a pension system flexible to permit adjustments in accord with changing conditions and at the same time maintain the integrity of the system. [Citations.] Such modifications must be reasonable, and it is for the courts to determine upon the facts of each case what constitutes a permissible change. To be sustained as reasonable, alterations of employees' pension rights must bear some material relation to the theory of a pension system and its successful operation, and changes in a pension plan which result in disadvantage to employees should be accompanied by comparable new advantages." (*Allen* v. *City of Long Beach* (1955) 45 Cal.2d 128, 131 [287 P.2d 765].)

■ The question that must next be resolved here is whether the actuarial report bore a material relationship to the theory of the pension system. The proposed change did bear some financial relationship to the integrity of the COLA system. *Firefighters* and *Pasadena Police Officers* both hold that such future funding is permissible to maintain system integrity. A problem different from financial integrity arises under the *Allen* test. The employees here lost a right to have the city finance the unfunded past liability in the

system. There has been no corresponding benefit for the lost right. Thus, there has been a breakdown in the city's showing that its implementation of the actuarial report bore any material relationship to the underlying theory of the Fresno pension and COLA system. Under the theory of that system, it is the city that must pay for past unfunded liability. This creates the further issue of whether the change was reasonable under the theory of the system.

The actuarial report merely identified debt. It did not, as it legally could not, apportion debt under the terms of the municipal code. There has been no showing of extreme hardship by the city nor has there been a showing that the system would collapse without employee financing of past unfunded liability. Few reported decisions have in fact found that the balance of economic necessity outweighed the employees' right to offsetting advantages where liability was imposed. One case that found the balance to lie with economic necessity was an action in which the underlying pension system had become completely insolvent. (*Houghton* v. *City of Long Beach* (1958) 164 Cal.App.2d 298, 306 [330 P.2d 918].)

The city has not made such an assertion of insolvency in the instant action nor can it be found in the actuarial report. The record before the trial court shows that there was an accumulation of unfunded past liability in the system that had not been liquidated. One could infer that if left unabated, such accumulated debt would eventually overwhelm the system. However, there was no evidence presented to the court below that the system was on the brink of insolvency. Therefore, the city cannot prevail on a theory of economic necessity or upon a theory that the integrity of the system would fail if it had to finance the entire debt related to past unfunded liability. In short, the trial court's benefit-burden analysis is supported both by past and current case law.

## CONCLUSION

The trial court erroneously concluded that the drafters of COLA section 2-1840.4 did not contemplate the problem of unfunded liability. Section 2-1840.4, subdivision (i), incorporates guaranty section 2-1825 from the general retirement plan. In turn, the guaranty section incorporates sections 2-1821 and 2-1822 which make general retirement system unfunded liability for past and present service employees an obligation of the city.

Although the above analysis of the Fresno City Municipal Code pension scheme differs from the interpretation used by the trial court, the difference in analysis still leads to the same conclusion. Under the benefit-burden standard set forth in California Supreme Court cases, the city has made a

retroactive change in the underlying pension plan which adversely affects the substantive rights of its employees. We hold that the past unfunded liability of the Fresno City COLA system was made the city's obligation by ordinance. The city's failure to honor this obligation violated article I, section 9 of the California Constitution.

The city has failed to sustain its burden of showing that the underlying integrity of the system would be threatened if it had to meet the burden, imposed by its own ordinances, of financing past unfunded liability in the COLA system without contributions by the employees. This violates the terms of the municipal code. Because the pension cases treat the municipal code as a contract between the parties, a violation of the code necessarily becomes a violation of the contract clause.

The parties have agreed from the inception of this litigation that the employees must equally share the burden of future COLA increases created by future liabilities in the system based on actuarial evaluations. This is consistent with both the *Firefighters* and *Pasadena Police Officers* cases.

## DECISION

The peremptory writ issued under the seal of the trial court is dissolved. The trial court is to enter a new order directing the city to assume responsibility for all unfunded liability in the COLA system for present retired employees and past service of active employees. Future unfunded liability of active employees is to be split evenly between the employees and the city. Respondents are awarded their costs on appeal.

Hanson (P. D.), Acting P. J., and Hamlin, J., concurred.